IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Tex Hall, individually, and on behalf The Fort Berthold Allottee Land and Mineral Owners Association, Melanie Brugh-Johnson, Vernita Finley, and all other similarly situated Allottees on the Fort Berthold Indian Reservation, McKenzie and Dunn Counties, North Dakota, | |
| Plaintiffs, | **COMPLAINT** |
| v. | Civil No. ___1 :18 -CV- 217___ |
| Tesoro High Plains Pipeline Company, LLC, Tesoro Corporation, Tesoro Logistics GP, LLC, Tesoro Companies, Inc. (Tesoro) aka Andeavor or Andeavor Logistics, LLC, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs are enrolled members of the Three Affiliated Tribe that possess ownership interests in individually owned lands (Allottees) held in trust by the Bureau of Indian Affairs, US Department of Interior that contain a pipeline operated by Defendants within the exterior boundaries of the Fort Berthold Indian Reservation. Defendants are a group of oil and gas related companies principally located in the state of Texas, operating throughout the world, including the State of North Dakota and the sovereign lands of the Fort Berthold Indian Reservation by and through a consensual agreement and licensure for business from the Mandan Hidatsa Arikara ("MHA") Nation TERO Office.   Plaintiffs

1

allege Defendants have knowingly and willfully operated its pipeline through Fort Berthold Indian Reservation for years while in trespass without valid and current authorization from or payment to approximately 450 Enrolled Members of the Three Affiliated Tribes (Allottees).

## PARTIES

1.      Plaintiffs include enrolled members of the Three Affiliated Tribes owning allotted trust land surface acres, in whole or in part, within the exterior boundaries of the Fort Berthold Indian Reservation ("FBIR"), over which Defendants' pipeline runs.

2.      Plaintiff Tex Hall is an enrolled member of the Three Affiliated Tribes and owns allotted trust lands over which Defendants' pipeline runs.

3.      Plaintiff Tex Hall is also the President of the Fort Berthold Allottee Land and Mineral Owners Association ("FBALMOA"), a group of Allottees that have formed an association to advocate and monitor the mineral, surface and water rights of enrolled members of the Three Affiliated Tribes.

4.      Plaintiff Melanie Brugh-Johnson is an enrolled member of the Three Affiliated Tribes and owns a life estate of allotted trust lands over which Defendants' pipeline runs.

5.      Plaintiff Vernita Finley is an enrolled member of the Three Affiliated Tribes and owns allotted trust lands over which Defendants' pipeline runs.

6.      Upon information and belief, Tesoro High Plains Pipeline Company, LLC, Tesoro Companies, Inc. and Tesoro Logistics GP, LLC are subsidiaries of Andeavor with principal offices in the state of Texas, operating worldwide, including the state of North Dakota and the Fort Berthold Indian Reservation. Tesoro High Plains Pipeline Company,

2

LLC, Tesoro Companies, Inc., and Tesoro Logistics GP, LLC are licensed to do business in the State of North Dakota.

7.    Upon information and belief, Andeavor was formerly known as Tesoro Corporation, operates the pipeline at issue and other oil and gas ventures including a refinery in Mandan, ND.   Andeavor Logistics LP is licensed to do business in the State of North Dakota.

8.    Upon information and believe the pipeline at issue has either been sold or a sale is pending to Marathon Oil Company.   Marathon Oil Company is licensed to do business in the State of North Dakota. Plaintiffs reserve the right to amend their Complaint to include Marathon Oil Company.

**JURISDICTION**

9.    This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the action involves the trespass to Indian lands pursuant to 25 U.S.C. § 345 and more specifically to allotted lands held in trust by the United States for individual Allottees.

10.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because the parties because the parties are citizens of different states and the amount of controversy exceeds $75,000.

11.    A case of actual controversy exists between the parties as hereinafter alleged warranting this Court's declaration pursuant to 28 U.S.C. §2201 and 28 U.S.C. § 2202.

12.    The Court has pendant and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367.

13.     Venue in this district is proper under 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, the property that that is the subject of the action is situated in this judicial district, and, upon information and belief, all Plaintiffs are residents of this state, and the Defendants conduct business within this state in which this district is located.

## FACTS COMMON TO ALL COUNTS

14.     Plaintiffs include enrolled members of the Three Affiliated Tribes owning allotted surface acres within the exterior boundaries of the Fort Berthold Indian Reservation ("FBIR").

15.     The intended class of Plaintiffs include over 450 owners of Allotted lands that include but are not limited to: 355A, 618A, 698A-A, 698A-B, 715A, 717A, 832A, 833A, T880A-A, 880A-B, 880A-D, 881A-B, 940A, 1001A, T10121-A, 1050A, 1086A, 1104A, 1105A-B, 1105A-C, 1108A, T1120A, T1120A-A, 1125A, 1127A, 1734, 1744, 1761, 1791, 1793,1794, T1827, 1949, T1950, 2098-B, 2098-C, 2098-D, 2133, 2134, 2206, 2206-A, approximately 64 acres of allotted lands.

16.     Defendants, collectively called "Tesoro" or "Andeavor" own and operate a pipeline across the Fort Berthold Indian Reservation and have operated said pipeline without authorization from the BIA or individual Allottees.

17.     Tesoro has operated in knowing and willful trespass without paying any compensation to Allottees while conducting its profitable business enterprises involving oil and gas.

18.     Federal law controls the right-of-way process on Indian lands and includes United States Code Title 25 and Part 169 of Title 25 of the Code of Federal Regulations.

4

Strict compliance is required with federal law.

19.    In order to operate a pipeline across Plaintiffs' lands, an easement is required pursuant to 25 U.S.C. § 323, 25 U.S.C. § 324, and 25 CFR § 169.107. Defendants have failed to secure an easement from the Plaintiffs or the BIA for the pipeline at issue in this action.

20.    In order to receive an easement, Defendants are required to "notify all individual Indian landowners and … obtain written consent from the owners of the majority interest in each tract affected by the grant of right-of-way" pursuant to 25 CFR § 169.107(b).

21.    The pipeline at issue in this case was placed in 1953 pursuant to an easement dated September 18, 1953 for an easement term of twenty (20) years.

22.    A new easement was issued on June 18, 1973, effective June 18, 1973, for an easement term of twenty (20) years.

23.    A new easement was allegedly issued on February 7, 1995, effective June 18 ,1993 for an easement term of twenty (20) years.

24.    The easement for said pipeline has expired and the pipeline remains without easement or permission of Plaintiffs.    Defendants have not restored the land to its original condition at the end of the term of the easement as required by 25 CFR § 169.25(c)(5)(ix).

25.    Defendants continue to utilize the pipeline, making a significant profit, without payment to the Allottees.    The oil transported by the pipeline benefits Defendants' oil refinery located in Mandan, North Dakota.

26.    Defendants did not notify Plaintiffs that the easement for the pipeline at

issue were expired and instead entered into negotiations with the Three Affiliated Tribes regarding the tribally owned tracts of land on which the pipeline is located. Defendants ultimately settled with the Three Affiliated Tribes paying the Three Affiliated Tribes $53,777,513 to compensate for trespass and an easement on 28.2 acres of Tribal land. The Three Affiliated Tribes was paid $5,000,000 per acre for trespass damages and $615,397 per acre for an easement on the 28.2 acres of Tribal land.

27.    Only after reaching an Agreement with the Three Affiliated Tribes, did Defendants reach out to individual Allottees in October 2017, offering $6,000 per acre for the easement, $14,000 per acre for trespass, and an annual payment of $2,000 per acre.

28.    The BIA issued an Order to Show cause on January 30, 2018 to Defendants regarding its unauthorized occupancy of the lands held in trust by the United States for the Three Affiliated Tribes and individual landowners.   Defendants indicated that it was involved in "good faith negotiations" with individual landowners. Negotiations have failed regarding compensation to individual Allottees regarding the continued presence of the pipeline on Plaintiffs' property.

29.    Defendants did not operate in good faith with Plaintiffs and sought to ignore requests for reasonable compensation, repress full information relating to their actions, failed to respond in a timely manner to requests for information, and knowingly treated Plaintiffs unreasonably, unfairly, and with bad faith.

30.    Defendants have produced and transported oil over the land of many similarly situated Allottees within the Fort Berthold Indian Reservation without compensation, an easement, or right-of-way.

6

31.    Despite the failure to have an easement or permission to be on the property, Defendants continue to operate the pipeline without compensation to the Plaintiffs and in violation of law.

## CLASS ALLEGATIONS

32.    Pursuant to Federal Rules of Civil Procedure 23(b)(1) and 23(b)(3), Plaintiffs seek to represent all Allottees or enrolled members of the Three Affiliated Tribes, including their estates, similarly situated within the Fort Berthold Indian Reservation who own lands over which Defendants' pipeline crosses without the consent of the majority interest of the owners, including those who withdraw their consent prior to the approval of a valid right-of-way, and without a valid right of way .

33.    The purported class is numerous to a degree that it is impractical to join all enrolled members and assert their rights without certification of the class.   The class would consist of over 450 enrolled members involving approximately 64 acres, some of which is believed to be highly fractionated with multiple owners.

34.    The purported class are all similarly situated, owning lands over which Defendants' pipeline crosses without either consent and/or BIA approval, therefore the issues at law are similar, the facts are similar, and the alleged violation of rights is similar.

35.     Plaintiffs and their counsel will fairly and adequately represent and protect the interests of all members of the class.

36.    Many of the members of the proposed class have already been notified and/or attended previous meetings of the FBALMOA, and can be further ascertained by Tribal and Bureau of Indian Affairs ("BIA") records.

37.     Separate actions are not feasible, resulting in different compensation packages that deny justice to those that cannot or will not afford the expertise of counsel.

38.     Questions of law and fact common to the claims of all Allottees include (without limitation):

    a.  Are Allottees entitled to an accounting from the Defendants for conversion, wrongful, and willful occupation of their property?

    b.  Did Defendants breach express and implied contractual duties to Allottees?

    c.  Did Defendants breach statutory duties to Allottees?

    d.  Did Defendants breach fiduciary duties to Allottees?

    e.  Did Defendants' wrongfully convert Allottees' land?

    f.  Are Allottees entitled to compensatory damages from Defendants their actions or omissions?

    g.  How much were Defendants unjustly enriched by breaching its fiduciary duties to Allottees?

    h.  Are Allottees entitled to recover the amounts Defendants were unjustly enriched by breach of its fiduciary duties to them?

    i.  What was the highest market value for Allottees land that was converted by Defendants?

    j.  What are the damages suffered by each Allottee for Defendants' failure to have a valid easement or right-of-way?

    k.  What are the damages suffered by each Allottee for Defendants' trespass?

39.    Separate actions by individual Allottees would, as a practical matter, affect absent Allottees without giving them the protection of representation in the action.

40.    The common questions of law and fact predominate over questions affecting only individual Allottees, and a class action is superior to other available methods for fair and efficient adjudication of this controversy.    The common facts of this litigation demonstrate a later court would likely rely on the outcome of this case.    An adjudication on the claims of these Allottees on facts common to claims of other Allottees would be very persuasive in later litigation on like claims and, as a practical matter, would be dispositive of other Allottees' claims.    Reservation-wide evidence must be developed, and legal remedies common to all Allottees within the Fort Berthold Indian Reservation are sought.    All proposed class members are Allottees within the Fort Berthold Reservation with Defendants' pipeline trespassing on its property without a valid lease, right-of-way, or compensation.    A class action is the most appropriate means for adjudicating the like claims of all Allottees and any defenses asserted by Defendants.

41.    The claims of these representative Plaintiffs are typical of the claims of each Allottee within the Fort Berthold Indian Reservation and arise out of the identical facts constituting the wrongful conduct of the Defendants.    These representative Plaintiffs will fairly and adequately protect the interests of the class of Allottees similarly situated.    The individual claims of other Allottees are generally insufficient in amount, in view of the scope of evidence, detailed issues, and extent of expenses in this type of litigation, to afford relief through multiple lawsuits.

## COUNT ONE - TRESPASS

42.     Plaintiffs re-allege the above paragraphs.

43.     Defendants knowingly and willfully utilized Plaintiffs' property without a valid easement or consent and in violation of law at the expiration of the Easement and Right-of-Way.   Defendants failed to secure a new easement or restore the property to its original condition at the expiration of the Easement and Right-of-Way.

44.     Defendants are conducting business without consent or authorization of Plaintiffs and without approval of the BIA.

45.     Defendants' actions and/or omissions constitute trespass.

46.     Plaintiffs are damaged by Defendants' actions and/or omissions and entitled to compensatory damages, an accounting of profits, a share of the profits made by Defendants for their illegal use of the property, and punitive damages.

## COUNT TWO – UNJUST ENRICHMENT

47.     Plaintiffs re-allege the above paragraphs.

48.     Defendants have operated for years without authorization or approval of its pipeline that crosses the sovereign lands of the Three Affiliated Tribes and/or the individual Allottee landowners over which the Defendants' pipeline crosses.

49.     The benefit received by Defendants operated to the detriment and impoverishment of Plaintiffs.

50.     Defendants were enriched by its profitable business enterprise and receipt of substantial and enormous revenue for said pipeline unjustly, without payment to the Plaintiffs.

51.    Plaintiffs were impoverished as a result of Defendants' use of Plaintiffs' property without compensation. There is no justification for Defendants' enrichment.

52.    The retention of benefits received by Defendants, without compensation to Plaintiffs is inequitable and a detriment to Plaintiffs.

53.    Defendants actions and omissions constitute unjust enrichment.

54.    Plaintiffs are damaged by Defendants' actions and/or omissions and entitled to compensatory damages, an accounting of profits, a share of the profits made by Defendants for their illegal use of the property, and punitive damages.

## COUNT THREE - ACCOUNTING

55.    Plaintiffs re-allege the above paragraphs.

56.    Defendants must account to Plaintiffs the revenues received through said pipeline, together with interest at the rate of eighteen percent (18%) per annum, court costs, and reasonable attorney's fees.   Defendants actions and omissions constitute deliveries and sales of oil transported through said pipeline.   Plaintiffs are entitled to an order compelling the Defendants to make a complete accounting to Allottees for all sales of unitized royalty oil.

57.    Defendants' failure to pay individual Allottees constitutes wrongfully converted use of lands to its own use.   Under N.D.C.C. § 32-03-23, Defendants' are liable, at the option of the Plaintiffs, for the highest market value of the converted lands at any time between the conversion and the verdict in this case, together with fair compensation for the time and money Plaintiffs reasonably expend in pursuit of their property.

58.    Defendants actions and omissions warrant an accounting.

## COUNT FOUR - CONVERSION

59.     Plaintiffs re-allege the above paragraphs.

60.     Defendants converted Plaintiffs' property by utilizing the property without permission or compensation, representing that Plaintiffs' property has little to no pecuniary value, and claiming compliance with federal law.

61.     Defendants have deprived Plaintiffs of their property by preventing or withholding the complete use and enjoyment of the property and appropriating the economic value of the use and benefit of Plaintiffs' property.

62.     Defendants actions and/or omissions have prevented Plaintiffs from making the highest and best use of their property.

63.     Defendants use of Plaintiffs' property without compensation or permission is a wrongful exertion of dominion over Plaintiffs' property.

64.     Defendants use of Plaintiff's property without compensation or permission is inconsistent with and in defiance of the rights of the Plaintiffs to determine how their property is to be utilized.

65.     Defendants use of Plaintiff's property without compensation or permission is a wrongful taking and constitutes conversion.

66.     Defendants' actions and/or omissions amount to a taking of Plaintiffs' lands.   Under N.D.C.C. § 32-03-23, Defendants' are liable, at the option of the Plaintiffs, for the highest market value of the lands at any time between the conversion and the verdict in this case, together with fair compensation for the time and money Plaintiffs reasonably expend in pursuit of their property.

12

## COUNT FIVE – WRONGFUL AND WILLFUL OCCUPATION OF PROPERTY

67.     Plaintiffs re-allege the above paragraphs.

68.     Defendants have forcibly excluded Plaintiffs from the unrestricted use and enjoyment of their property for the pipeline at issue in this case.

69.     Defendants' actions or omissions amount to wrongful occupation of property pursuant to N.D.C.C. § 32-03-21 and N.D.C.C. § 32-03-22. Defendants are liable for the value of the use of the property during occupation and "three times the sum as would compensate for the detriment caused" to Plaintiffs pursuant to N.D.C.C. § 32-03-29.

## COUNT SIX – VIOLATION OF FEDERAL LAW

70.     Plaintiffs re-allege the above paragraphs.

71.     Upon information or belief, Defendants' actions and/or omissions in construction or maintenance of the pipeline at issue in this case, as pipe is exposed on portions of Plaintiffs' property.   Defendants have failed to maintain the pipeline at issue in this case in a professional manner consistent with industry standards as required by 25 CFR§ 169.25(5)(i), (vii).

## COUNT SEVEN – CONSTRUCTIVE TRUST

72.     Plaintiffs re-allege the above paragraphs.

73.     Upon information and belief, Defendants failed to include pay a bond, insurance, or other method of security for the highest annual rental and other estimated damages pursuant to 25 CFR § 169.103.

74.     Defendants have a confidential relationship with the Plaintiffs and was in a position of trust and confidence relating to the pipeline at issue in this case.

13

75.    Defendants' unjust enrichment and confidential relationship compels the imposition of a constructive trust to prevent further unjust enrichment of Defendants by their wrongful interference with Plaintiffs' possession of property.

## COUNT EIGHT – ACTUAL AND CONSTRUCTIVE FRAUD

76.    Plaintiffs re-allege the above paragraphs.

77.    Defendants committed actual fraud relating to the use of Plaintiffs' property.    Defendants intentionally and fraudulently deceived Plaintiffs and other similarly situated Allottees as to the process of getting an easement or right of way for the pipeline at issue in this case and compensation for trespass.

78.    The process for an easement and compensation for trespass were material and not reasonably discoverable by Plaintiffs or similarly situated Allottees in exercise of ordinary care and diligence.

79.    The process for an easement and compensation for trespass were known or should have been known by Defendants.

80.    Defendants were aware that the pipeline at issue in this case did not have a valid easement or right-of-way and that they were trespass on Plaintiffs' property. Defendants had a duty to deal fairly with Plaintiffs and compensate them for use of their property.

81.    Defendants knowingly, intentionally, and willfully utilized Plaintiffs' property without permission or authorization to create a significant financial windfall.

82.    Defendants knowingly, intentionally, and willfully, in an attempt to defraud Plaintiffs, sought consent from individual landowners without recognition of its trespass,

14

by trying to hide the amount of payment made to the Three Affiliated Tribes, and without payment of fair market value for the property to Plaintiffs.

83.    Defendants made knowingly false statements to Plaintiffs and similarly situated Allottees to mislead, delay, or prevent Plaintiffs from knowing their rights under federal law and to pay Plaintiffs an amount significantly less than fair market value for use of the property.   Defendants' statements were intentionally false and Defendants knew or should have known of the falsity of such statements.

84.    Defendants fraudulently suppressed the amount paid to the Three Affiliated Tribes in order to pay Plaintiffs an amount significantly less than fair market value for use of the property.

85.    Defendants actions and/or omission were done with the intent to induce reliance by Plaintiffs and other similarly situated Allottees as to the process to receive an easement and compensation owed for Defendants' trespass.

86.    Defendants' silence with respect to any facts relating to the process for an easement or payment of compensation for trespass was misleading to Plaintiffs and a positive misrepresentation of fact. Defendants were bound in good faith to disclose relevant information to Plaintiffs.

87.    By breaching the duty to disclose any facts relating to the process for an easement or payment of compensation for trespass, Defendants misled Plaintiffs, to Plaintiffs' prejudice and Defendants gained an advantage thereby in not paying for use of Plaintiffs' property.

88.    Regardless of actual fraudulent intent on the part of Defendants, Defendants misled Plaintiffs and other similarly situated Allottees regarding the process for an easement or payment of compensation for trespass.

89.    Plaintiffs are damaged by Defendants' fraudulent actions and/or omissions and entitled to and entitled to compensatory damages and punitive damages.

## COUNT 9 – BREACH OF CONTRACT

90.    Plaintiffs re-allege the above paragraphs.

91.    Defendants' Grant of Easement for Right-of-Way executed in 1973 and 1995 are expired. Defendants failed to enter into a new easement agreement prior to the expiration of the easements. Defendants had a duty to restore the land to its original condition at the end of the term of the easement as required by 25 CFR § 169.25(c)(5)(ix). Defendants have failed to do so.

92.    Defendants actions and/or omissions are a breach of its Agreement to restore the property.

93.    Plaintiffs are damaged by Defendants' actions and are entitled to compensatory damages.

## COUNT 10 – DECLARATORY RELIEF

94.    Plaintiffs re-allege the above paragraphs.

95.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. §2201 and 28 U.S.C. § 2202.

96.    Plaintiffs are entitled to a judgment declaring that Defendants are trespassing upon Plaintiffs' property and they must immediately vacate Plaintiffs' property and restore it to its original condition.

## COUNT 11 – PUNITIVE DAMAGES

97.    Plaintiffs re-allege the above paragraphs.

98.    Defendants intentionally failed to follow federal law, hid payments made to the Three Affiliated Tribes, failed to negotiate in good faith, failed to pay fair market value for the Plaintiffs' property, and intentionally trespassing or wrongfully possessing Plaintiffs' property without compensation.  Defendants actions misled Plaintiffs and similarly situated Allottees regarding the trespass on Plaintiffs' property.

99.    Defendants actions in failing to follow federal law, hiding payments made to the Three Affiliated Tribes, failing to negotiate in good faith, failing to pay fair market value for the Plaintiffs' property, and intentionally trespassing or wrongfully possessing Plaintiffs' property without compensation showed such a willful misconduct, malice, fraud, wantonness, oppression, or such want of care that would raise the presumption of conscious indifference to consequences.  As a result of Defendants' conduct, Plaintiffs are entitled to recover punitive damages in an amount to be determined at trial.

## PRAYER FOR RELEIF

WHEREFORE, Plaintiffs pray for the following relief:

1.    An accounting;

2.    For adequate and full compensation for the years of trespass committed by Defendants, in an amount to be established at trial;

3.    Conversion damages;

4.    For class certification to be granted;

5.    For punitive damages, by future motion if necessary, a reasonable time before trial;

6.    Pre-judgment interest at the rate of eighteen percent (18%) per annum as authorized by statute

7.    Post-judgment interest at the same rate;

8.    For the immediate removal of said pipeline that runs through Plaintiff's individual allotment;

9.    For an immediate cease and desist of the operation of said pipeline that runs through Plaintiff's individual allotment, and or deferral of such action to the Tribal entities holding business licensure over Defendants within the exterior boundaries of the Fort Berthold Indian Reservation;

10.   For the claw back of any and all funds Defendants have received via the of said pipeline that runs through Plaintiff's individual allotment

11.   That the Court order that Defendants pay not less than    $128,000,000 to be placed into a Constructive Trust for the benefit of the Plaintiffs and similarly situated Allottees.

12.   A complete inspection of pipeline by a certified 3rd party due to pipe exposed above ground in several locations in violation of Federal Law.

13.   That the Court issue an order that this matter be maintained as a class action and certifying Plaintiffs as representatives of the class;

14.   That Pringle & Herigstad, P.C. be appointed as counsel for the class;

15.   Punitive Damages in an amount to be determined at trial;

16.   Costs and attorney's fees as authorized by statute; and

17.   Any other relief that may be just and proper.

## JURY TRIAL DEMAND

**Plaintiff demands a trial by a jury of nine for all issues so triable.**

18

Dated this 26th day of October, 2018.

PRINGLE & HERIGSTAD, P.C.

By _____
Debra L. Hoffarth, #05668
Matthew H. Olson, #06182
Scott M. Knudsvig, #05823
Ashleigh B. Ensrud,#07174
Attorneys for Plaintiffs
2525 Elk Drive
P.O. Box 1000
Minot, ND 58702-1000
(701) 852-0381
dhoffarth@pringlend.com
molson@pringlend.com
sknudsvig@pringlend.com
aensrud@pringlend.com